## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 26 2017, 5:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gregory L. Fumarolo
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Damon L. Taylor,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

January 26, 2017

Court of Appeals Case No.
02A05-1603-CR-635

Appeal from the Allen Superior Court

The Honorable Samuel Keirns, Judge

Trial Court Cause No.
02D05-1506-F6-528

**May, Judge.**

[1] Damon L. Taylor appeals the revocation of his probation and execution of his suspended sentence. In light of his behavior at the Center for Nonviolence on January 29, 2016, we find no abuse of discretion.

## Facts and Procedural History

[2] On June 11, 2015, the State charged Taylor with Level 6 felony domestic battery with a prior conviction of domestic battery,[1] Level 6 felony domestic battery committed in the presence of a child under age 16,[2] and Level 6 felony battery on a person under age 14.[3] Taylor pled guilty to domestic battery with a prior conviction and battery on a person under 14, pursuant to an agreement that provided for dismissal of the third count of battery.

[3] Sentencing occurred on September 1, 2015. For battery with a prior conviction, the court imposed a one-year suspended sentence to be served consecutive to a 183-day executed sentence for battery on a person under 14. The court entered a no-contact order prohibiting Taylor from contacting the victims of his battery and ordered him to complete a Batterers Intervention Program at the Center for Nonviolence as a condition of probation. Taylor had already served 86 days at the time of sentencing and was released to probation on September 7, 2015.

---

[1] Ind. Code § 35-42-2-1.3 (2014).

[2] *Id.*

[3] Ind. Code § 35-42-2-1(b)(1) (2014).

[4] On November 18, 2015, the State filed a petition to revoke probation in which it alleged Taylor violated probation when he:

> 1. Did not report for supervision as instructed. Last contact was on October 20, 2015, and all attempts to contact have failed.

> 2. Did not attend/complete Batterers Intervention Program at the Center for Non-Violence.

(App. at 61.) On December 1, 2015, Taylor appeared in court for an initial hearing on that revocation petition. Taylor explained to the trial court that he had not returned to probation supervision because of a scheduling error, and he showed the court the erroneous letter he had received in mid-November telling him his next appointment was on "October 17, 2015." (Defendant's Ex. A.) The trial court released Taylor back to probation, instructed him to attend appointments and complete the Batterers Intervention Program, and set a status hearing for January 7, 2016.

[5] At a hearing on January 7, the court appointed counsel for Taylor and continued the revocation hearing to January 28. On January 28, the hearing was reset to February 16, due in part to Taylor having an intake appointment for the Batterers Intervention Program scheduled for January 29. Taylor attended the intake appointment but was not accepted into the Program because of his aggressive behavior and failure to admit an act of violence.

[6] The court held the probation revocation hearing on February 25, 2016. Thereafter, it found and ordered, in pertinent part:

> The Court finds by a preponderance of the evidence that the defendant violated the terms and conditions of probation. The suspended sentence is ordered revoked. The defendant is committed to the Indiana Department of Correction on Count I for one (1) year with thirteen (13) days jail credit.

(App. at 82.)

# Discussion and Decision

[7] A trial court may revoke probation if:

> (1) the person has violated a condition of probation during the probationary period; and
>
> (2) the petition to revoke probation is filed [within stated limits].

Ind. Code § 35-38-2-3(a) (2015). Unless the probationer admits violation, the court must hear evidence "in open court" and the State "must prove the violation by a preponderance of the evidence." Ind. Code § 35-38-2-3(f) (2015). "[V]iolation of a single condition of probation is sufficient to revoke probation." *Jenkins v. State*, 956 N.E.2d 146, 149 (Ind. Ct. App. 2011), *trans. denied*.

[8] When a probationer appeals the sufficiency of evidence supporting revocation, "we consider only the evidence most favorable to the judgment - without regard to the weight or credibility - and will affirm if there is substantial evidence of probative value to support the trial court's conclusion that a probationer has violated any condition of probation." *Murdock v. State*, 10 N.E.3d 1265, 1267 (Ind. 2014) (internal citations and quotations omitted).

[9]     As a condition of probation, Taylor was required to complete the Batterers Intervention Program at the Center for Nonviolence. The first two times he was given the referral, Taylor failed to schedule an intake appointment. When he finally engaged with the Center for Nonviolence after the third referral, his behavior led the Center to refuse to treat him. The Men's Program Coordinator from the Center for Nonviolence explained:

> Before the meeting, [Taylor] had been loud and disrespectful with two front desk staff when attempting to schedule the appointment. When he arrived for the intake, he came in and asked if we could do this "quick" because he's been working all day. I had him fill out paperwork and then we began the orientation. He appeared irritated and repeatedly had said that he was in the program before and knew the rules. . . . He said that he just wants to get this "done" and get home. . . . [A coworker] knocked on the door and I went to answer her question. We both heard [Taylor] yell, "I don't have time for this," through the door. He then became more intense and became louder. I went back in and we began to talk about his violence. He said "She threw my clothes – they charged me with a battery." He said his act of violence was an altercation in front of a child. "Verbal altercation that's all it was." I asked "What did you say?" He said, "I don't remember, I really don't think I said anything." During the intake he acknowledged verbal violence but could not elaborate on specific words he used. He was still loud and visibly irritated. I asked him about the other acts of violence that he admitted to using on our initial intake form. He said, "That's all in the past." At this point he was very loud and showing aggressive body language (leaning forward).
>
> I asked him to leave because of his loud and aggressive demeanor and said that he has not been able to admit to our criteria of violence for admittance into the program. This is because he

would not talk about any other violence or elaborate on his verbal altercation in front of a child. This was a case where simply saying one act of violence was not enough for admittance compared to the aggressive demeanor (loud voice, angry tone) that was displayed. I got up and opened the door and he came out. He continued to be loud in the hallway and I repeatedly asked him to leave. I told him I would call the police if he wouldn't leave. At this point his eyes became very wide and [he] started "talking with his hands." He said, "Call them; I'm not doing anything wrong." He said he wanted to talk to a supervisor. Staff heard him yelling on the second floor of our organization. I went upstairs and John Beams and Juan Navarro came down. He remembered John, from his time in the program in 2013, and instantly became less intense than with me. John calmly explained that if he wanted his money back then he could write a letter to the committee to see if they would give it back. Then he left. Later, one staff members [sic] said, "He was acting like a maniac." Another stated he was "out of control." We feel that with this aggressive behavior, it would be unfair and possibly unsafe to other group participants and staff to allow him into our program.

(State's Ex 2 at 1-2.) In light of the fact that Taylor would not be able to complete the required treatment program because his aggressive behavior at the Center for Nonviolence left the staff concerned about whether his admission would make the program "unsafe to other group participants and staff," (*id*. at 2), we find no abuse of discretion in the trial court's finding a violation of probation that justified revocation. *See*, *e.g.*, *Smith v. State*, 727 N.E.2d 763, 766 (Ind. Ct. App. 2000) (revocation of probation proper where defendant violated no contact order by having contact with a child before completing sex offender therapy).

[10] Taylor also challenges the court's choice of punishment for the violation.

> If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may impose one (1) or more of the following sanctions:
>
> (1) Continue the person on probation, with or without modifying or enlarging the conditions.
>
> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
>
> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

Ind. Code § 35-38-2-3(h) (2015). We review the court's choice of sanction for an abuse of discretion, which occurs when "the decision is clearly against the logic and effect of the facts and circumstances." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007).

[11] Taylor was on probation for Level 6 felony battery with a prior conviction of battery. As a condition of that probation, he was required to complete the Batterers Intervention Program. When he went to the Center for Nonviolence, Taylor was so loud and aggressive that staff became concerned that allowing Taylor into the program would create safety concerns for other attendees or staff. As the opportunity to have a suspended sentence did not seem to be curbing the aggressive tendencies that led to Taylor's convictions of battery, we see no abuse of discretion in the court revoking the entirety of Taylor's one-year

suspended sentence. *See*, *e.g.*, *Williams v. State*, 883 N.E.2d 192, 196 (Ind. Ct. App. 2008) (no abuse of discretion in imposition of entire two-year suspended sentence when probationer refused to submit to drug tests required by the adult day reporting program).

# Conclusion

[12] Taylor has not demonstrated the court abused its discretion in revoking his probation or in ordering execution of the entirety of Taylor's suspended sentence. We accordingly affirm.

[13] Affirmed.

Kirsch, J., and Crone, J., concur.