Ralph D. SMITH, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 85A02–9911–CR–753.

Court of Appeals of Indiana.

April 27, 2000.

Craig Persinger, Marion, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Kostas A. Poulakidas, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

HOFFMAN, Senior Judge

Defendant–Appellant Ralph D. Smith appeals the revocation of his probation. We affirm.

Smith raises three issues for our review, which we restate as:

1. Whether the State presented sufficient evidence to support the trial court's order revoking probation.

2. Whether Ind.Code § 35–38–2–2.4, the basis of the probationary condition which the trial court found was violated in this case, is vague under the Indiana and/or United States Constitutions.

3. Whether Ind.Code § 35–38–2–2.4 is overbroad under the Indiana and United States Constitutions.

In 1994, Smith was convicted of child molesting, as a Class C felony, and attempted child molesting, as a Class B felony. The trial court sentenced Smith to a total of ten years in the Department of Correction, suspending three years with three years probation following his release. In February of 1998, Smith was released from the Department of Correction and commenced his probationary term. A condition of Smith's probation was that Smith could not have contact with children under the age of sixteen until he completed a sex offenders treatment program.

Smith was unsuccessfully released from his sex offenders treatment program in January of 1999. Sometime thereafter, the State filed a petition to revoke Smith's probation on the basis that he had had contact with Bryant, a five-year-old boy. After a hearing, the trial court revoked Smith's probation. He now appeals.

Smith contends that the evidence presented at the revocation hearing was insufficient to support the trial court's order of revocation. A revocation hearing is in the nature of a civil proceeding, and the alleged violation only needs to be established by a preponderance of the evidence. *Morgan v. State*, 691 N.E.2d 466, 468 (Ind. Ct.App.1998). In reviewing the sufficiency of the evidence, we use the same standard as in any other sufficiency question. *Richeson v. State*, 648 N.E.2d 384, 389 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* When the appellant challenges the sufficiency of the factual basis for revocation, we neither reweigh the evidence nor judge the credibility of the witnesses. *Menifee v. State*, 600 N.E.2d 967, 970 (Ind. Ct.App.1992), *clarified on denial of reh'g*, 605 N.E.2d 1207 (1993). If substantial evidence of probative value supports the trial court's decision that the appellant has committed a violation of a condition of his probation, then revocation of probation was proper. *Richeson*, 648 N.E.2d at 389.

"The sole question at a probation hearing is whether the probationer should be allowed to remain conditionally free, given evidence of repeated antisocial behavior, or rather should be required to serve the previously imposed sentence in prison." *Morgan*, 691 N.E.2d at 468. The decision whether to revoke probation is a matter addressed to the sole discretion of the trial court. *Hubbard v. State*, 683

N.E.2d 618, 620 (Ind.Ct.App.1997). Evidence of a single probation violation is sufficient to sustain the revocation of probation. *Menifee,* 600 N.E.2d at 970.

■ In the present case, Bryant's mother testified that she had married Smith after his release from prison and that she was aware of the "no contact" condition of his probation. Rachel Guyer, Bryant's teacher at "Head Start," reported in her "Anecdotal Observation Form" that Bryant originally told her that Smith, whom he called "dad," sometimes came to his house. She further reported that Bryant later told her that Smith "lives with me now." (R. 32). Pam Brown, a Head Start teacher's aide and bus driver, testified that Smith sometimes waited outside the house for Bryant to be dropped off by the bus. Brown also testified that on one occasion Smith gave Bryant a hug while the bus was in front of the house. Brown further testified that she observed Smith in the car when Bryant's mother drove Bryant to school. Sue Holley, a Head Start bus monitor, confirmed Brown's observation that Bryant considered Smith to be his "dad." Holley testified that she saw Smith waiting with Bryant for the Head Start bus to arrive.

The evidence that Bryant was comfortable in identifying Smith as his father supports an inference that the contact between Smith and Bryant was substantial. Also, the observations of the Head Start employees were sufficient to show contact on more than one occasion. Furthermore, Brown's testimony was sufficient to show an incident of physical contact between Smith and Bryant. The trial court did not abuse its discretion in revoking Smith's probation.

Smith contends that Ind.Code § 35–38–2–2.4, the statute forming the basis for the "no contact" provision of his probation agreement, is unconstitutionally vague. Specifically, he contends that the statute could be interpreted to prohibit unintended contact in a public setting, talking on the telephone to a fifteen-year-old paper boy calling to inquire about a newspaper subscription, or saying "hello" to a young child that the accused passes on the sidewalk. The statute provides that as a condition of probation, a trial court may require an offender to (1) participate in an approved treatment program for sex offenders, and (2) avoid contact with any person who is less than sixteen years of age, unless the probationer receives the court's approval or successfully completes the aforementioned treatment program.

■ A statute is unconstitutionally vague if individuals of ordinary intelligence would not comprehend it to adequately inform them of the conduct to be proscribed. *Reed v. State,* 720 N.E.2d 431, 433 (Ind.Ct.App.1999), *trans. denied.* The statute need only inform the individual of the generally proscribed conduct; it need not list, with itemized exactitude, each item of conduct prohibited. *Mallory v. State,* 563 N.E.2d 640, 644 (Ind.Ct.App. 1990), *trans. denied.*

■ Smith's constitutional challenge fails for two reasons. First, we note that Smith failed to file a motion to dismiss raising a constitutional challenge before the trial court. Accordingly, the challenge is waived. *Reed,* 720 N.E.2d at 433; *Vaillancourt v. State,* 695 N.E.2d 606, 610 (Ind.Ct.App.1998), *trans. denied* (holding that the failure to file a proper motion to dismiss raising a constitutional challenge to a criminal statute waives the issue on appeal). Second, Smith is not at liberty to devise hypothetical situations which might demonstrate vagueness. *See Mallory,* 563 N.E.2d at 644; *Davis v. State,* 476 N.E.2d 127, 130 (Ind.Ct.App.1985) *trans. denied.* A statute is void for vagueness only if it is vague as applied to the precise circumstances of the instant case. *Mallory,* 563 N.E.2d at 644–45; *Davis,* 476 N.E.2d at 130–31.

■ The evidence in the instant case establishes that Smith was present in the same car and house as Bryant. The evi-

dence further establishes that on at least one occasion Smith had physical contact with Bryant. No reasonable person of ordinary intelligence would have difficulty determining that intentional interaction with and physical touching of Bryant was proscribed by Ind.Code § 35–38–2–2.4.

Smith also contends that Ind.Code § 35–38–2–2.4 is unconstitutionally overbroad under the Indiana Constitution and the First Amendment of the United States Constitution. Specifically, Smith argues that the statute impermissibly impedes upon his First Amendment right of association.[1]

■ Our supreme court has found no persuasive precedent for the proposition that federal overbreadth analysis has taken root in the jurisprudence of the Indiana Constitution. *Price v. State*, 622 N.E.2d 954, 958 (Ind.1993). We therefore limit our consideration of this issue to Smith's First Amendment claim.

■ The "overbreadth doctrine" is "designed to protect innocent persons from having the legitimate exercise of their constitutionally protected freedoms fall within the ambit of a statute written more broadly than needed to proscribe illegitimate and unprotected conduct." *Matheney v. State*, 688 N.E.2d 883, 905 (Ind.1997), *cert. denied*, 525 U.S. 1148, 119 S.Ct. 1046, 143 L.Ed.2d 53 (1999). The authoritative construction of statutes by state courts controls overbreadth analysis. *Helton v. State*, 624 N.E.2d 499, 508 (Ind.Ct.App. 1993). The crucial question is whether Ind.Code § 35–38–2–2.4 "sweeps within its prohibitions a substantial amount of conduct which may not be punished under the First and Fourteenth Amendments." *Id.* A statute is not overbroad merely because an appellant may conceive of a single impermissible application. *Id.* at 509.

■ A trial court has broad discretion to impose conditions of probation which will produce a law abiding citizen and protect the public. *Patton v. State*, 580 N.E.2d 693, 698 (Ind.Ct.App.1991), *trans. denied.* Within certain parameters, the condition may impinge upon the probationer's exercise of an otherwise constitutionally protected right. *Id.* The Constitution does not prohibit the State from punishing dangerous behavior or attempting to prevent recidivism by those who engage in criminal behavior through their associational relationships. *Helton*, 624 N.E.2d at 509.

■ In analyzing the propriety of probation conditions which impinge on First Amendment rights, we have adopted a three-part test. *See Purdy v. State*, 708 N.E.2d 20, 23 (Ind.Ct.App.1999); *Patton*, 580 N.E.2d at 698 (setting forth a test stated in *United States v. Tonry*, 605 F.2d 144 (5th Cir.1979), *abrogation recognized on other grounds, U.S. v. Texas Tech*, 171 F.3d 279 (1999)). The test requires that conditions must be "reasonably related" to the purposes of the statute, and obliges us to consider (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement. *Patton, id.* This test provides an appropriate standard which "facilitates 'an accommodation between the practical needs of the probation system and the constitutional guarantees of the Bill of Rights.'" *Id.* (*quoting United States v. Pierce*, 561 F.2d 735, 739 (9th Cir.1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978)).

In his appellate brief, Smith concedes that the first and third prongs of the *Tonry* test would militate against a finding of overbreadth in this case. Indeed, the State has a substantial interest in preventing recidivism of this criminal behavior by prohibiting a convicted child molester's in-

---

1. We address the overbreadth issue even though it was waived by Smith's failure to address it below.

teraction with persons under the age of sixteen, and the needs of law enforcement are met by such a prohibition. Thus, we need only decide whether the statute is too broad because, as Smith suggests, it changes punishment from probation to virtual house arrest by unreasonably prohibiting inadvertent or unintentional contact.

We believe that a condition of probation requiring a probationer to avoid even inadvertent or unintentional contact with children is unworkable and too broad to be reasonably related to the purposes of Ind.Code § 35–38–2–2.4. However, we further believe that the failure of Ind.Code § 35–38–2–2.4 to explicitly address inadvertent or unintentional contact does not render the statute facially overbroad. In reaching this conclusion, we take note of our recent decision in *Carswell v. State,* 721 N.E.2d 1255, 1260 (Ind.Ct.App.1999). In *Carswell,* we considered an overbreadth issue related to a condition of probation that required the probationer to submit to warrantless searches of his person and his property. We noted the constitutional requirement that such searches are proper only if "reasonable." *Id.* at 1261. We ultimately held that "though not explicitly contained in the probation statute, we think that a limitation that all searches of probationers be conducted only upon reasonable cause is inherent in such conditions, even if not explicitly stated." *Id.* at 1262. Here, we believe that it is inherent in Ind.Code § 35–38–2–2.4 that a probationer is not required to avoid inadvertent or unintentional contact with persons less than sixteen years of age. *See State v. Lo,* 228 Wis.2d 531, 599 N.W.2d 659, 662 (App. Ct.1999) (holding that in the face of an overbreadth challenge, the court must use common sense to avoid unreasonable or absurd results).

The trial court did not err in concluding that there was sufficient evidence to support the revocation of Smith's probation. Furthermore, the statute providing the premise for the no-contact condition of probation is neither vague nor overbroad.

Affirmed.

NAJAM, J., and MATTINGLY, J., concur.